1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2

3   ------------------------------X
                                  :
4   UNITED STATES OF AMERICA,     :
                                  :   96-CR-339 (EHN)
5              v.                 :
                                  :   August 13, 1999
6   UMEME RAYSOR and RONALD       :   Brooklyn, New York
    STANLEY,                      :
7                  Defendants.    :
    ------------------------------X
8

9        TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
          BEFORE THE HONORABLE EUGENE H. NICKERSON
                UNITED STATES DISTRICT JUDGE
10

11  APPEARANCES:

12

13  For the Government:        ZACHARY W. CARTER
                               UNITED STATES ATTORNEY
14                             BY:  STEPHEN KELLEY, ESQ.
                                    CATHERINE FRIESEN, ESQ.
15                             ASSISTANT U.S. ATTORNEYS
                               225 Cadman Plaza East
16                             Brooklyn, New York  11201

17
    For the Defendants:
18  Umeme Raysor/              JEREMY SCHNEIDER, ESQ.
    Ronald Stanley/            VALERIE AMSTERDAM, ESQ.
19

20
    Audio Operator:           JOSHUA BARSKY
21

22
    Court Transcriber:        CARLA NUTTER
23                            TypeWrite Word Processing Service
                              356 Eltingville Boulevard
24                            Staten Island, New York 10312

25


    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service

2

```
1         THE CLERK:  Criminal Cause for Sentencing, United
2  States of America v. Umeme Raysor and Ronald Stanley.
3         MR. KELLEY:  Good afternoon, Your Honor.  Stephen
4  Kelley and Catherine Friesen on behalf of the United States.
5         MS. AMSTERDAM:  Valerie Amsterdam of Amsterdam &
6  Brandon for Ronald Stanley.
7         MR. SCHNEIDER:  Good afternoon, Your Honor.  Jeremy
8  Schneider for Umeme Raysor.
9         THE COURT:  We'll take Mr. Raysor first.  Is he ready
10 for sentence?
11        MR. SCHNEIDER:  Well, we're ready to proceed.  Yes,
12 Your Honor.
13        THE COURT:  Okay.
14        MR. SCHNEIDER:  After consultation with the
15 Government as well as Ms. Amsterdam, we have a number of
16 objections or comments regarding the Probation Report that will
17 require, I think, us to go over virtually page-by-page at this
18 time.  We are aware, however, that our comments will not effect
19 your ability to sentence the defendants today.
20        I think everybody in this Courtroom knows what the
21 ultimate sentence will be pursuant to the guidelines and the
22 statute.  So we are not anticipating anything we say here to
23 have any impact at this moment.  But we do --
24        THE COURT:  Why would you want to say it?
25        MR. SCHNEIDER:  Because our comments do reflect the
```

3

1    Probation Report, and the Probation Report does follow these

2    gentlemen and could have an effect on their incarceration.

3              THE COURT:  Okay.  That's true.

4              MR. SCHNEIDER:  So that's why we think it's relevant

5    at this time, Your Honor.

6              MS. AMSTERDAM:  And if I could just add one --

7              THE COURT:  You want to let him finish or do you want

8    to interrupt?  Whatever you want to do.

9              Do you mind Ms. Amsterdam interrupting you or would

10   you like to make a presentation?

11             MR. SCHNEIDER:  I'm prepared to make a presentation

12   and I'm also prepared to have Ms. Amsterdam join at a point

13   that she feels is appropriate unless Your Honor objects.  I

14   have no objection to Ms. Amsterdam.

15             THE COURT:  No, no, you go ahead.

16             MR. SCHNEIDER:  So if Ms. Amsterdam has something to

17   say on what I'm just saying, I have no problem with that, Your

18   Honor.

19             Ms. Amsterdam, do you have anything to say?

20             MS. AMSTERDAM:  I just don't want to duplicate

21   anything that I have to say additionally when we get to Mr.

22   Stanley.  I just wanted to indicate to the Court that the

23   corrections that we wanted for the Probation Report if adopted

24   by the Court would still permit the Court to sentence

25   defendants today but simply ask that those corrections if the

4

1  Court found them to be valid be made before the Report was

2  forwarded to the Bureau of Prisons.

3          MR. SCHNEIDER:  What I'd like to do first, Your

4  Honor, is make a general comment regarding the Probation

5  Report.  And it's our position -- and I have reviewed it with

6  Mr. Raysor, by the way, as well as with Ms. Amsterdam -- that

7  the Probation Report appears to have been completed almost

8  before the trial was completed in an attempt to, we believe,

9  unduly sway the reader in a pro-Government position.  For

10  example, there are many, many references -- and I will be

11  highlighting the references -- to not only acquitted conduct

12  which under certain circumstances can be taken into

13  consideration, but there are references to conduct that there

14  was affirmative proof that Mr. Raysor was innocent of.  For

15  example, the Madesto Gaston murder, which was not acquitted

16  conduct but was a count that was dismissed by the Government

17  and redacted from the indictment.  So he was deemed by the

18  Government to have been innocent of that crime because they

19  knew he was in jail at the time of the crime and, therefore,

20  couldn't have done the crime the way their own witness said,

21  and yet the Probation Report spends approximately five or six

22  paragraphs on the Madestos Gaston murder.  I'd also refer to it

23  as acquitted conduct, but which in fact is not true.

24          Additionally, there was a statement from Michelle

25  Carter.  Now, Michelle Carter, (1) turned out to be a defense

5

1    witness, and (2) the same letter that the Government filed

2    dismissing the counts against Mr. Raysor regarding Madestos

3    Gaston also included dismissing the counts regarding Michelle

4    Carter as a victim in this case.

5                THE COURT:  Why don't we go over it as you said.

6                MR. SCHNEIDER:  Fair enough, Your Honor.

7                THE COURT:  So that, you know, now you've got to give

8    me something to focus on.

9                MR. SCHNEIDER:  Fair enough.  I appreciate that.

10               THE COURT:  If you want me to take something out,

11   tell me what it is you want me to take out.

12               MR. SCHNEIDER:  Yes, Your Honor.  Fair enough, Your

13   Honor.

14               Number one, beginning at paragraph ten, where there

15   is a representation by the Probation Department that there --

16   "Agents conservatively estimate the gang sold about fifty kilos

17   of crack a year, $90,000.00 per week."  That's the last

18   sentence of paragraph ten which is page six.

19               Well, I think there is no evidence -- there was no --

20               THE COURT:  Page what?

21               MR. SCHNEIDER:  I'm sorry.  Page six, paragraph ten,

22   the last sentence.

23               THE COURT:  Okay, I have it.  The last sentence.

24               MR. SCHNEIDER:  Actually, the next to last sentence.

25   Excuse me.

6

1          THE COURT:  The last sentence, "As the gang
2   prospered" is the last sentence?
3          MR. SCHNEIDER:  I'm looking.  No, Your Honor, then
4   it's the sentence before that.  Excuse me.
5          THE COURT:  Okay.
6          MR. SCHNEIDER:  "ATF agents conservatively estimate."
7          THE COURT:  Okay.
8          MR. SCHNEIDER:  And it's for that sentence which
9   referred to an amount of drugs and the value of that drug.  I
10  think that's really inappropriate.
11         THE COURT:  Okay.
12         MR. SCHNEIDER:  Paragraph thirteen, Your Honor, which
13  is at page seven.  I'm sorry, I have to just back up.  I know
14  Your Honor hates when I do that, but it's paragraph eight on
15  page five, where there is a reference to "the organization
16  being responsible for an estimated forty homicides."  That has
17  no basis in fact, Judge, and I think it is prejudicial which is
18  the slightest word that one can use about that.  And I think
19  it's completely inappropriate to have that --
20         THE COURT:  Excuse me.  Where do you see that?
21         MR. SCHNEIDER:  I'm sorry, Your Honor.  It's
22  paragraph eight.  It's about seven lines down.
23         THE COURT:  I see it.
24         MR. SCHNEIDER:  And there was zero evidence at the
25  trial about that.  That's just questions that the Probation

7

1   officer put to detectives during their investigation.  So that,

2   I think, is inappropriate, Your Honor.

3          THE COURT:  Okay.

4          MR. SCHNEIDER:  Now, back to paragraph thirteen.  The

5   last sentence of paragraph thirteen, they talk about the

6   "murders of only ten individuals which the Raysor organization

7   was responsible."  Again, Your Honor, my client was either

8   innocent and the cases were dismissed, or found not guilty and,

9   therefore, that should not be the gist of this Probation Report

10  where they're going to only discuss the details of ten

11  homicides.  That's an objection I have with paragraph thirteen,

12  Your Honor.

13         THE COURT:  What do you want me to take out of it?

14         MR. SCHNEIDER:  The last sentence of paragraph

15  thirteen.

16         THE COURT:  Okay, I see it.

17         MR. SCHNEIDER:  And continuing along that same page,

18  page seven, paragraph fourteen under the heading of "the murder

19  of Edward Morris," paragraphs fourteen, fifteen, and sixteen

20  should be completely deleted at least regarding Mr. Raysor's

21  conduct.  Mr. Raysor was acquitted.  It was found not proven.

22         First of all, he wasn't charged with any substantive

23  crime of murder or conspiracy to commit murder of Mr. Morris,

24  he was charged in the Racketeering Act.  He was found not

25  proven for the Edward Morris allegations.

8

1          That would be paragraphs fourteen, fifteen, and

2     sixteen, Your Honor.

3          THE COURT:  Okay.

4          MR. SCHNEIDER:  Now, going to page nine, beginning at

5     paragraph 21 which refers to the "gun dealer murders, the

6     murder of Allan Wayne Ramsey and the murder of Brian Duggan."

7     I would ask Your Honor that paragraph 21, paragraph 22,

8     paragraph 23, 24, and 25 be completely deleted from the Report.

9     My client was found not proven as all of the Racketeering Acts

10    regarding those murders as well as the attempted murder of

11    another individual who was there that day.

12                    (Pause in proceedings)

13          MR. SCHNEIDER:  I'm sorry, I thought you were doing

14    something, Your Honor.

15          THE COURT:  No, I'm not.

16          MR. SCHNEIDER:  I apologize, Your Honor.

17          Now, referring to paragraphs 26 through thirty,

18    referring to "problems with rival drug dealers."  I think those

19    should be also stricken.  Specifically, if you notice at

20    paragraph 28 it begins with "according to agents."  Well, that

21    isn't evidence -- this is a very long trial with a lot of

22    witnesses as Your Honor will very well remember, and I think

23    that conversations with agents about what they believe

24    occurred, which was not part of the evidence, specifically not

25    related to Mr. Raysor should be stricken and should not follow

9

1  him in his institutions, Your Honor.  So I think up to

2  paragraph thirty, that should be taken out.

3      Paragraph 31, the murder of Ronald Yearwood.  My

4  client wasn't charged with that.  That was, I think, considered

5  the "Red Door" shootings.  And the Red Door shootings was

6  involving Gerald Lewis, one of the Government's main witnesses.

7  But my client wasn't charged with that.  He wasn't named either

8  as a Racketeering Act or as a substantive charge.  And, again,

9  Your Honor, there was no credible evidence connecting him to

10 the Red Door shootings or the Red Door killings and

11 specifically Ronald Yearwood.  And I think that should be taken

12 out, Your Honor.

13     Paragraph 32 through paragraph 37.  The Madestos

14 Gaston murder.  That I find even less justifiable to include in

15 this Report as I mentioned earlier.  He wasn't even charged in

16 the indictment because the Government dismissed it and redacted

17 the indictment because they have affirmative credible proof

18 that they believe that my client could not have done it because

19 he was incarcerated at the time.  So the charges were dismissed

20 against him, not acquitted.  Again, there may be justification

21 for acquitted conduct but there is, I don't believe, any

22 justification for conduct that the Government dismisses before

23 the jury begins hearing the case.

24     So paragraphs 32 through 37 should be excised from

25 this Report.

10

1      THE COURT:  I see it.  Go ahead.

2      MR. SCHNEIDER:  Now, beginning at paragraphs 38

3 through paragraphs 43, which refer to the "Witness Killings."

4 The murders of Jamella Brown, Kimma Reaux and Christopher

5 Ryant.  My client was found not proven of each of those

6 Racketeering Acts.  Each one.  The Governments presented

7 evidence about it.  They relied heavily on their witnesses and

8 Mr. Raysor was found not proven for every one of those

9 individual acts as Racketeering Acts.  That would be 38 through

10 43, Your Honor.

11      Paragraph 44, the "Gregory Tucker Assaults."  He

12 wasn't found guilty of any Gregory Tucker assaults and I don't

13 even know if he was charged with the Gregory Tucker assault.  I

14 don't know why that's included at all.  That's paragraphs 44

15 through 46.

16      Paragraph 47 which talks about the "arson and felony

17 murder of Yvonne Archibald."  That case is gone.  That case is

18 over.  Not in any way connected to Mr. Raysor.  Why are they

19 talking about.

20      THE COURT:  I don't see these mentioned in any of

21 those.

22      MR. SCHNEIDER:  Well, Your Honor, his name is --

23 "telephoned to police to report Raysor drug activity in front

24 of her home.  The Raysor organization wanted Archibald to cease

25 phoning, etc., etc."

1          THE COURT:  I thought you were referring something

2   where your client is mentioned.  I mean if you're saying they

3   shouldn't put in anything about "the group," however you want

4   to call it, that's one thing.  If you're saying that where

5   there's something where he's specifically alleged to be doing -

6   -

7          MR. SCHNEIDER:  No, I agree.  I'm sorry.

8          THE COURT:  Go ahead.

9          MR. SCHNEIDER:  I had been referring, Your Honor, to

10  specifically what my client was mentioned in.  This is the

11  first time that he wasn't specifically mentioned that I'm

12  taking objection to that, to the general statement.  But Your

13  Honor is correct.  Previously, I had been only referring to

14  when he was specifically mentioned in the counts, Your Honor.

15  I'm sorry if I interrupted you.

16          Referring now, Your Honor, if I may to paragraph 53

17  which, again, refers back to the Madestos Gaston murder and it

18  says "See, paragraphs 31 to 36."  I would ask that be stricken.

19  Paragraph 53.

20          Now, I guess one thing to note -- it's a little bit

21  different though -- referring to paragraph 54, Your Honor,

22  which referred to an example of a "typical Raysor drug

23  transaction," referring to an April 9th transaction where

24  others were involved; Maurice Matthews and Michael Jones.  The

25  interesting thing to note is that the two incidents that were

1   on videotape that the Government charged Mr. Raysor with -- two

2   hand-to-hand drug transactions -- and he was charged in

3   substantive counts.  He was found not guilty of those counts.

4   The only substantive narcotics count that he was charged with

5   counts, he was found not guilty of.  So then to include in

6   paragraph 54 and talk about an example of a "typical Raysor

7   drug transaction," I think is inappropriate.  If the Probation

8   Report wants to refer to these particular defendants --

9   Matthews, Michael Jones, etc. -- being involved in a specific

10  sale, that's one thing.  But these defendants named in the

11  Probation Report were not on trial here.  My client was

12  acquitted of the only substantive counts he was charged with

13  regarding the drug transactions of different dates.  So I think

14  paragraph 54 should be stricken as well because it doesn't

15  really have any relevance to Mr. Raysor's sentence.  It doesn't

16  add anything to the information that Your Honor would need in

17  sentencing Mr. Raysor, and all I can do is unduly influence

18  whoever reads this report against Mr. Raysor where there is

19  enough information to influence them on the facts of what he

20  was found guilty of.  There's no need to include anything else

21  that is really peripheral in nature, Your Honor.  So that's my

22  objection to paragraph 54.

23          Paragraph 55 which is related to paragraph ten in

24  terms of the amount of drugs used, "50 kilograms, $90,000.00 a

25  week, and a $4 million profit," Your Honor, again, that's not

13

1  in the evidence, wasn't in the evidence, and there was nothing

2  to support those kinds of numbers in terms of property seized,

3  drugs seized, cash, land, cars, jewelry, anything like that.

4  So there is really nothing to in any way corroborate that

5  statement to make it sound like a $4 million operation over

6  this period of time.

7          Additionally, Your Honor, the Probation officer,

8  herself, found Mr. Raysor to be financially indigent, having no

9  money, any assets that can be connected to him in any manner,

10  shape or form.

11          So that's paragraph 55, Your Honor.

12          Referring now to paragraph 61. I have to say, Your

13  Honor, I had to read it again to make sure -- this is paragraph

14  61 -- about four or five lines from the bottom which talked

15  about "Umeme Raysor and Stanley kidnapped Tucker." I heard the

16  testimony, and I believe Your Honor did too, there was no

17  testimony about that. There's no charge about that. There's

18  no allegation about that. Where did that come from? How did

19  this officer make this up? So I would ask that paragraph 61,

20  Your Honor, specifically regarding Umeme Raysor being involved

21  in kidnapping of Tucker be deleted from the Report as well.

22          Paragraph 62, about five or six lines down which

23  refers to Michael Sidberry. Now granted, Mr. Sidberry is not a

24  client of mine but I think that when you have information that

25  is unnecessarily prejudicial or inflammatory, and incorrect,

1   that has a spillover effect on the defendant who is present

2   here when he's considered the leader or one of the leaders of

3   the organization.

4          Michael Sidberry was, it says here, "fired a gun at

5   Tucker."  Well, he was found not guilty, Mr. Sidberry.  He

6   walked out.  The case was over against him.  I don't see why

7   that should in any way be taken as a fact that he fired a gun

8   at Mr. Tucker and I would ask that that be stricken as well.

9   That's paragraph 62.

10          Paragraph 69, at page 22, is the continuation of

11  paragraph 69.  It talks about my client being fascinated with

12  firearms and "he would keep an arsenal of weapons."  Well, it's

13  interesting but the only weapons that were recovered here were

14  weapons found during the arrests of the Government's witnesses;

15  weapons that were found during the --

16          THE COURT:  My recollection is there was testimony

17  that he kept guns.  I may be wrong about that.

18          MR. SCHNEIDER:  You're not wrong, Your Honor.  There

19  was testimony about that from certain of the cooperating

20  witnesses.

21          THE COURT:  No, that was him.

22          MR. SCHNEIDER:  Well, he was found -- if I may, there

23  were no substantive charges of --

24          THE COURT:  I don't understand that that's the

25  function of a Presentence Report.

1          MR. SCHNEIDER:  I understand that, Your Honor, but my

2     feeling, Your Honor, is that this information didn't come from

3     cooperating witnesses or from the trial transcript, it came

4     from agents --

5          THE COURT:  I do recall someone testifying to Mr.

6     Raysor keeping a bunch of guns.  I don't remember who it was.

7          MR. SCHNEIDER:  Your Honor is correct.  There was

8     testimony by a cooperator about that.  But it is still my

9     position, Your Honor, that that was not corroborated by either

10    the agents or seizures for anyone else.

11         THE COURT:  So what difference does that make?  It

12    still can go in the Presentence Report.

13         MR. SCHNEIDER:  Well, Your Honor can choose to accept

14    it if you wish.  It's my feeling that based on the evidence.

15         THE COURT:  But I mean it isn't just the evidence

16    that was trial that goes into the Presentence Report.

17         MR. SCHNEIDER:  I'm aware of that, Your Honor.

18    That's my objection.  Your Honor is obviously free to do --

19         THE COURT:  Okay, I understand your objection.

20         MR. SCHNEIDER:  I appreciate that.

21         Again, at paragraph 69 it continues, once again,

22    referring to "an excess of 50 kilograms of crack" that again,

23    "Umeme Raysor participated and/or ordered the deaths of Edward

24    Morris, Alfkay Williams, Jr., Brian Duggan, and Allan Wayne

25    Ramsey."  Not proven, Judge, except for the Alfkay Williams,

16

1   Jr. charge.  That was the only one that he was found -- the

2   Racketeering Act that was proven against Mr. Raysor regarding

3   the murders or any assaultive conduct.

4           Again, the Edward Morris situation, the Brian Duggan

5   and Allan Wayne Ramsey should not be included in paragraph 69,

6   Your Honor.  I just think it's inappropriate.

7           Paragraph 72 indicates that the Government informed

8   that "Umeme Raysor ordered the murder of Leonard Rothwell."

9   Well, the Government introduced certain evidence about the

10  Leonard Rothwell situation in Virginia as an attempt to show

11  the conspiracy, etc.  There's no Racketeering Act regarding the

12  Leonard Rothwell murder.  There was no substantive act

13  regarding the Leonard Rothwell murder.  And something I don't

14  even understand; at the very last sentence of page 22,

15  paragraph 72, it says "This murder remains as an uncharged

16  homicide in Brooklyn, New York as witness to this murder --

17          THE COURT:  What paragraph are you looking at?

18          MR. SCHNEIDER:  Paragraph 72, Your Honor.

19          THE COURT:  Oh, 72.

20          MR. SCHNEIDER:  Yes.  The very last sentence on page

21  22, Your Honor.

22          THE COURT:  Okay, I see it.

23          MR. SCHNEIDER:  So, I don't understand.  If Mr.

24  Rothwell is allegedly -- well, he was killed in Virginia -- not

25  allegedly -- he was killed in Virginia.  What does Brooklyn

1 have to do with it in terms of an uncharged homicide in

2 Brooklyn?  So, clearly, the information in this Report is not

3 based on fact so that --

4          THE COURT:  Well, I suppose there could have been a

5 charge of murder filed here and it was never prosecuted.

6          MR. SCHNEIDER:  But, Your Honor, it's my

7 understanding that the murder happened in Virginia.

8          THE COURT:  This is a different murder?  I thought --

9 is this not another murder rather than Rothwell?  The one

10 that's referred to here?

11          MR. SCHNEIDER:  No, because it seems to say -- the

12 second sentence of paragraph 72 says, "This murder remains

13 uncharged in Brooklyn."

14          THE COURT:  Oh, okay.  All right.

15          MR. SCHNEIDER:  So that appears to me to be totally

16 not at all related to the facts as anybody knows them.

17          Paragraph 74, Your Honor, where it refers to Mr.

18 Stanley's conduct.  Again, in the very middle of that

19 paragraph, about eight or nine lines down, it says, "From

20 prison with the help of Umeme Raysor, he ordered the killing,

21 etc., etc."  My client was found not proven of the Racketeering

22 Acts of those witness murders.  His name should be taken from

23 that paragraph regarding any of his involvement in the witness

24 murders in paragraph 74.

25          Now, Your Honor, would be happy to know I'm now

18

1  moving to paragraph 113.  So I skipped a whole lot of

2  paragraphs.

3           Clearly, I'm not addressing Ms. Williams because I

4  believe Ms. Williams does intend to make a statement here to

5  Your Honor.  Ms. Williams is the mother of Alfkay Williams,

6  Jr., who did testify at this trial.  But what I am just going

7  to refer to, Your Honor, is there a request by the Government

8  at paragraphs 113, etc., requesting restitution in a certain

9  amount based on a financial affidavit of the loss that Ms.

10 Williams attested to, $12,627.86.  Number one, I'm objecting to

11 that in general against Mr. Raysor.  He is going to be

12 sentenced to life in prison in a matter of moments, and the

13 amount of money that he makes in prison, I think, should not be

14 taken from him at that point in time.  However, should Your

15 Honor choose to grant the Government's application to order

16 restitution -- and also, if I may, the Probation officer does

17 recommend that no fine or restitution be imposed based on Mr.

18 Raysor's status and the fact that he will be incarcerated.

19           THE COURT:  I think restitution is now mandatory.

20           MR. SCHNEIDER:  Well, Your Honor, I did see the

21 Government's submission and that does appear to be the state of

22 the law.  But what I'm going to ask Your Honor to do regarding

23 that is to divide the restitution should Your Honor agree that

24 Mr. Raysor was responsible for that and in fact he was found

25 guilty of that.  To divide the restitution between the people

1  who on the witness stand admitted that they were involved in

2  that shooting; the people who have pled guilty before Your

3  Honor and are also, I believe, awaiting sentence.  Those people

4  are Gerald Lewis, Arthur Keasley, and James Harris.  Those

5  three witnesses testified before Your Honor and admitted to

6  being involved in those --

7            THE COURT:  Were they all cooperators?

8            MR. SCHNEIDER:  Yes, they were, Your Honor.  Yes,

9  they were.

10            THE COURT:  I suppose it would be joint and several.

11            MR. SCHNEIDER:  Well, but the fact is, Your Honor, I

12  don't see -- if you believe that restitution is mandatory and

13  Your Honor does not have the discretion to either downwardly

14  depart either the restitution aspect of it or not impose it at

15  all, then whatever sentence you choose to give the cooperators

16  as part of their cooperation, I still believe the restitution

17  must be part of it.

18            THE COURT:  I'm not sure of that.

19            MR. SCHNEIDER:  I'm not sure --

20            THE COURT:  I'm not at all sure that's right.

21            MR. SCHNEIDER:  Well, it seems to me that Ms.

22  Williams should get the total amount of whatever she asked --

23  the $12,627.00.

24            THE COURT:  I'm sure she'll agree with that.

25            MR. SCHNEIDER:  So it seems to me that she should be

1   given --

2           THE COURT:  Well, I'll focus on that.  Okay.

3           MR. SCHNEIDER:  So we're now at paragraph 114, Your

4   Honor.

5           THE COURT:  Whatever.  It's your presentation.

6           MR. SCHNEIDER:  I'm sorry?

7           THE COURT:  Go ahead.

8           MR. SCHNEIDER:  Thank you.  On paragraph 114 it

9   referred to a loss -- I'm sorry, it's paragraph 115.  Excuse

10  me, Your Honor.  Again, that information does not relate to Mr.

11  Raysor.  He was acquitted and/or found not proven of that

12  charge -- Kimma Reaux or Christopher Ryant -- those are the

13  witness homicides.  And I don't even think that the Probation

14  officer is asking that Mr. Raysor be responsible for that.

15  But, again, the victim's mother who made that statement seems

16  to be not a pertinent part of Mr. Raysor's Presentence Report.

17          Additionally, at paragraph 116 which referred to

18  Michelle Carter as the alleged victim here, again, the

19  Government dismissed the case and the charges against any

20  defendant where Michelle Carter was the victim in the same

21  letter that they filed with the Court dismissing the charges

22  regarding the Madestos Gaston murder.  They also dismissed the

23  Michelle Carter charges.  And more importantly, Michelle Carter

24  testified on behalf of the defense in this case.  She testified

25  as a defense witness.  So to have her talk about the pain she

1  suffers, the flashbacks, the nightmares, while they are true,

2  should not in any way be attributed to Mr. Raysor or even Mr.

3  Stanley because (a) the case was dismissed, (b) she testified

4  for the defense, and (c) to have that information follow them

5  while they're incarcerated seems inappropriate, Your Honor.

6          That's regarding the offense in that portion.

7          Paragraph 163 which now begins to talk about Mr.

8  Raysor's family and his background.  Again, I don't know if it

9  matters or not but the Probation Department spent pages and

10 pages about acquitted conduct and wrote one sentence about Mr.

11 Raysor's mother being a New York City school teacher.  She came

12 to this Court for months and months during the trial with the

13 family.  She had a lot to say about Mr. Raysor as her son.  And

14 in fact the Probation Report is wrong.  She did call them.  She

15 left messages and they never contacted her back.  She was very

16 much interested in speaking to the Probation Department.  Would

17 it matter or not?  We know it ultimately would not.  But in

18 terms of the presentation to this Court, and in terms of the

19 effort made by the Probation Department and speaking to a

20 family member of somebody who is going to be facing life in

21 prison, I think more than one or two phone calls is relevant,

22 especially when you have somebody who came to Court and did in

23 fact call the Probation Department.  So that is a factual

24 inaccuracy of paragraph 164 which said that messages were left

25 for her but she did not return.

22

1            Paragraph 168, Your Honor, I find a little bit

2   offensive where the case agent said that they should not make

3   any home visits here to the Raysor household.  I believe Your

4   Honor was made aware of the fact that the defendant lived at

5   home with his mother and at times -- his mother bought the home

6   -- grandmother, who is present in Court and had been present

7   during this trial.  To say that a home visit would not be

8   appropriate just because of the nature of the charges --

9            THE COURT:  It didn't say it wouldn't be appropriate,

10  it said "it would be precarious."

11           MR. SCHNEIDER:  That's correct.  So being -- I'm not

12  sure which is worse, Your Honor.

13           THE COURT:  Well, I take it that's in the head of the

14  agent.  That's not --

15           MR. SCHNEIDER:  But then what happened was the

16  Probation officer took what was in the head of the agent to

17  heart and didn't make a home visit.  So, clearly, whatever was

18  in the head of the agent effected and unduly influenced the

19  actions of the Probation officer in not making a fuller,

20  complete report to Your Honor with a home visit that would have

21  seen that you didn't have people sitting up the stairs

22  packaging drugs and counting millions of dollars, and hiding $4

23  million, etc.  You would have seen a hard-working family

24  involved of Mr. Raysor and where he came from, where his mother

25  lived and his grandmother.  And in fact if there was a concern

1   about the home visit they could have made an attempt to call me

2   to have Ms. Raysor come to my office and interview her in, I

3   think, a less precarious situation.  My office is a little bit

4   less precarious than the situation in Brooklyn.  So that could

5   have been done should the Probation officer have felt it

6   necessary.

7            I'm referring now to paragraph 177 and paragraph 181.

8   I was present during the Presentence interview.  Not once --

9   never -- not one time did Mr. Raysor say he was involved in

10  stolen goods on the street.  He never said, "I hustled stolen

11  goods on the street."  He never said, "I was involved in

12  selling stolen goods on the street."  That is just not true.  I

13  was there for the entire interview.  He never said it.  He

14  never implied it.  He never in any way intimated it or

15  indicated it in any manner, shape, or form.  He said, "I hustle

16  on the street."  His family was involved in --

17           THE COURT:  He said what?  I'm sorry -- "I hustle on

18  the street"?

19           MR. SCHNEIDER:  "Hustled."  He supported himself by

20  "hustling on the street."  Not stolen goods, Your Honor.

21  Hustling like selling cakes at street fairs.  His family --

22           THE COURT:  Okay.

23           MR. SCHNEIDER:  Paragraph 196.  Your Honor will note

24  this my last -- I'm getting close to the end.

25           THE COURT:  I'm not trying to shut you off.

24

1    MR. SCHNEIDER:  I know you haven't said or done

2  anything to make me think that but I just know this could be a

3  tiresome procedure, Your Honor.

4    Paragraph 196 says, "There is a preponderance of the

5  evidence relating to the defendant's participation."  Based on

6  what?  Preponderance of the evidence -- in other words, just

7  because someone is found not guilty means "He must have done it

8  but he got away with it.  And if it had been a lower standard

9  he would have been found guilty."  Where does that come from?

10 And where does this Probation officer have the nerve to say

11 that when not only was he found not guilty of it, but the other

12 charges, he wasn't even charged with some of the Raymond Tucker

13 or the Gregory Tucker incidents.

14    So to ask Your Honor for an upward departure on a

15 life sentence, I think, is kind of a gutsy thing to do to begin

16 with.

17    THE COURT:  Have I been asked for an upward

18 departure?

19    MR. SCHNEIDER:  Yes, that's the last sentence of 196.

20    THE COURT:  Oh.  Well, how can there be an upward

21 departure?

22    MR. SCHNEIDER:  Well, that's a good question.

23    THE COURT:  How far upward can I go beyond life?

24    MR. SCHNEIDER:  Life plus a day.  I know, it doesn't

25 make sense.  That, I think is indicative, Your Honor, of the

1  attitude of the Probation Department in presenting this Report

2  to you.  So I would ask that the entire paragraph 196 be

3  stricken, Your Honor.

4          And those are my comments.  Actually, I would ask

5  Your Honor to authorize the ordering of the minutes here rushed

6  and then attaching the minutes and these objections to the

7  Probation Report so that can then follow Mr. Raysor to the

8  institution so that it won't have to catch up to him and maybe

9  get missed at that point.  I would that before he is sent

10  anywhere with the Probation Report following him that the

11  minutes be attached to that Report as well, Your Honor.

12          THE COURT:  All right.  Now, Ms. Amsterdam.

13          MS. AMSTERDAM:  We have to go to a different report.

14          THE COURT:  That's all right.

15          MS. AMSTERDAM:  Your Honor wants me to go next.

16  Fine.

17          My comments will track much of what Mr. Schneider has

18  already said and I, of course, do request also that as a

19  fallback position, if Your Honor doesn't want to go line-by-

20  line, an order or amended version to the Probation Report, that

21  the minutes at least be appended to the Probation Report so

22  that a complete record is provided to Bureau of Prisons.

23  That's my only concern here because, of course, as I've said,

24  Your Honor has no discretion.  The sentence is mandated here.

25  But a lot of what goes into this Report does have an impact for

1   decades as to place of location and the circumstances under

2   which Mr. Stanley is incarcerated.  It's for those reasons that

3   I believe that a Report that really fairly reflects what he did

4   and only he did should accompany him.

5           Moving, first, on the Stanley Report to page six,

6   Your Honor, to paragraph thirteen.  This was a request that was

7   already made by Mr. Schneider, about six or seven lines down on

8   paragraph thirteen in the overview.  It indicates that,

9   "Detectives believe they're responsible for an estimated forty

10  homicides."  That's the type of information that I think that

11  if I were in Bureau of Prisons and I was making a designation,

12  would impact me in terms of where I would send an individual

13  defendant.  But in fact, there is no basis either in the trial

14  record or in fact for that statement.  And I think that it

15  should be deleted.

16          Turning next to page seven, paragraph fifteen, which

17  was already addressed by Mr. Schneider in his objections, the

18  last two sentences of paragraph fifteen state that "ATF agents

19  conservatively estimate that during their prime, the gang sold

20  at least 50 kilos of crack."  I don't think that's supported by

21  the record, nor does this paragraph in any way make a

22  distinction as to, even if you were to credit this statement,

23  who the persons were who shared in these estimated dealings or

24  profits because there's a statement "during their prime."

25          The Court will remember that Ronald Stanley is

27

1   regarded as a younger generation.  He had older brothers and

2   cousins who were initially there according to the Government at

3   the inception of the conspiracy, and then Mr. Stanley, himself,

4   is incarcerated on state charges from 1993 almost to the

5   balance.  He's let out at some point and then arrested on this

6   case.

7            So to attribute that kind of weight and dollar amount

8   to him in the absence of a factual support, I don't think, is

9   warranted.

10           Turning next to page eight, paragraph seventeen,

11  regarding the Norfolk, Virginia evidence.  You'll see that the

12  last sentence there refers to the fact that Mr. Stanley was

13  given prime responsibility for running the drug business with

14  his friend and associate, Michael Sidberry.  If this paragraph

15  is to stay, it at least should be reflected in the Report that

16  Mr. Sidberry was acquitted of those charges, so that a reader

17  of this Report might be skeptical of the source of the

18  information and the voracity and credibility of the information

19  contained.

20           Similarly, in paragraph eighteen, the last two lines,

21  you'll see that reference to the fact that "Umeme Raysor

22  regularly used crack addicts and hired killers like James

23  Harris and Cecil Cross."  The Court knows that Mr. Cross was

24  charged with a single homicide and he was acquitted of that

25  conduct.  So to then take that acquitted conduct and put it

28

1  back in here without any qualifying language is to suggest to

2  the reader that all of the accusations in here are supported

3  both in fact and in law.  They are not.

4         I join Mr. Schneider's request that the last line in

5  that paragraph, "For purposes of this report, the murders of

6  only ten individuals will be discussed," I don't see any

7  purpose whatsoever for discussing murders that Mr. Stanley --

8  that the Government has never maintained he knew about,

9  participated in, or was involved in.  So when you move forward

10 and the next set of objections are right under that -- the

11 murder of Edward Morris -- you have paragraphs nineteen,

12 twenty, and 21.  No one has ever alleged that Mr. Stanley had

13 any knowledge or involvement in that murder.  To have that in

14 here is to simply suggest to the reader that this is a man who

15 not only committed violent crimes himself, but his entire life

16 that everyone he associated with committed violent crimes.  And

17 there's no negative to the Government to striking this

18 paragraph.  The only negative to leaving it in is that the

19 reader of this report is given information that's not qualified

20 in any way which is clearly potentially going to rebound to the

21 detriment of Mr. Stanley for conduct that no one ever asserted

22 that he was involved in.

23         Similarly, on page nine, the murder of Alfkay

24 Williams, paragraphs 22, 23, 24, 25, and 26.  There is no

25 allegation in fact or during the course of the trial that Mr.

1   Stanley had anything to do with this crime.  And it's inclusion

2   in this Report is --

3            THE COURT:  I don't see he's even mentioned.

4            MS. AMSTERDAM:  He isn't.  He isn't.  But this is his

5   Probation Report.  This is not a Probation Report of the Raysor

6   organization or the Probation Report of Umeme Raysor, or any

7   other defendant.  It is Ronald Stanley's Probation Report.

8   Ronald Stanley's Probation Report, I think, should reflect

9   Ronald Stanley's acts, Ronald Stanley's conduct and Ronald

10  Stanley's background.  And I believe that that should be

11  stricken from the Report.

12           You know, I note that in the last year I've done

13  cases in the Fourth, Third and Fifth Circuits, and around the

14  country people do Probation Reports very differently.  If

15  you're Mr. Stanley and you show up at the Bureau of Prisons

16  with this report, you're going to be treated very differently

17  than somebody in the Fourth Circuit which only reflects conduct

18  that the defendant, himself, was involved in doing.  This

19  prejudiced him in the eyes of the reader.

20           Similarly on paragraphs 26 through thirty -- the gun

21  dealers, the murder of Allan Wayne Ramsey, and the murder of

22  Brian Duggan -- I respectfully request that that whole portion

23  be deleted from this Report.  It has nothing to do with Mr.

24  Stanley.

25           The next section at paragraph eleven -- problems with

1  rival drug dealers -- paragraphs 31 through 35.  Again, nothing

2  to do with Mr. Stanley.  It's inclusion in this Report is

3  simply to say that people Mr. Stanley knew or related to by

4  birth were violent people.  How does that help them assign a

5  better prison or more appropriate facility for Mr. Stanley?

6           Paragraph 36, respectfully, has that problem but also

7  the problem of the fact that they refer to this murder being

8  committed by Leon Stanley and another unknown Stanley brother.

9  It is my belief that the Government has never maintained, nor

10 would they maintain --

11          THE COURT:  Which paragraph is that?

12          MS. AMSTERDAM:  36 on page twelve.

13          THE COURT:  Okay.

14          MS. AMSTERDAM:  I don't believe the Government has

15 ever maintained, nor do I believe that the Government would

16 maintain today that the other unknown Stanley brother is Ronald

17 Stanley.  And I believe that the inclusion of this paragraph,

18 both for the reasons I've stated before, suggesting that he has

19 other violent family members, but also for the additional

20 impact that a reader of this Report might think that he was the

21 other Stanley brother should be deleted.

22          The next section, the Madestos Gaston murder,

23 paragraphs 37 through 42, I believe should be deleted in their

24 entirety.  Mr. Stanley was never accused, nor has the

25 Government ever maintained that he had any involvement in these

1  crimes.  And I would join in Mr. Schneider's remarks that if

2  these counts are to remain in this Report, which I don't

3  believe they should be, that at least the Report should be

4  corrected to reflect the fact that the Government subsequently

5  learned that Umeme Raysor could not have participated in this

6  crime and that they withdrew the charges against him, at least

7  calling the reader's attention to the fact that some of the

8  information provided by the informants may not have been

9  correct.

10        Next, on the next section which is the witness

11  killings of which there was testimony in the Court -- and

12  actually it was a conviction of Mr. Stanley in connection with

13  these particular crimes -- I would ask that on page fifteen,

14  paragraph 48 which begins, "However, Stanley, still

15  incarcerated at the time, kept working with Umeme Raysor."

16  There's absolutely no evidence of that whatsoever.  In the

17  light most favorable to the Government one could say that there

18  was evidence initially of Mr. Stanley's requesting people to

19  come to his assistance.  But there is a complete lack of

20  evidence after the first person is murdered that Mr. Stanley

21  was ever consulted, ever participated in, had any knowledge, or

22  according to his writer, kept working to ascertain the true

23  identity.  There's just no information in the record whatsoever

24  as to that.

25        Moving forward, paragraph 52, the arson and felony

1    murder of Yvonne Archibald, I think should be stricken.  It

2    doesn't pertain to Mr. Stanley.  Never was asserted to maintain

3    to Mr. Stanley, and doesn't belong in this Report.  I also note

4    -- and I could be wrong -- but this is the incident in which

5    one of the witnesses gave contradictory information about and

6    so to have this appear in the Report when there's certainly a

7    factual basis for doubting the voracity of this even as it

8    pertains to the factual statement that's presented in the

9    Report gives additional reasons for this Court to strike it.

10          Paragraph 53, the Norfolk arson.  This is talking

11   about the conduct of Ronald Stanley and Michael Sidberry.

12   There is no qualifying language here that Michael Sidberry was

13   acquitted of that conduct.  And I think that when a reader

14   reviews this Report and believes that Mr. Stanley was with

15   somebody who fired weapons at a particular location it would be

16   important if not essential for the reader to know that Mr.

17   Sidberry was acquitted of firing those weapons at that

18   location.  Otherwise, the reader is left to believe that that

19   is a true statement and that by aiding and abetting, Mr.

20   Stanley must have helped Mr. Sidberry do this without telling

21   the reader that Mr. Sidberry was acquitted of it.

22          On paragraph 54, there's a statement, "In the mid

23   eighties, Chaka and Umeme Raysor pooled their money, and along

24   with other original members like Ronald Stanley," not only is

25   that not supported by the evidence, but earlier in the

33

1   Probation Report itself, it states that "the alleged Raysor

2   organization was begun with Ronald Stanley's older brothers."

3   I think the Court will remember that Ronald Stanley was twelve,

4   eleven, or thirteen at the time that the organization was

5   alleged to have begun and that's just a factual inaccuracy.

6           Beginning at paragraph 54 on page sixteen, the last

7   line, "The direction of the gang's leaders," I just want to

8   state -- and I'll address that at the end of my comments --

9   that I object to Probation's finding as a role adjustment that

10  Mr. Stanley is a leader.  But I'm just highlighting that

11  passage without addressing it at this moment.

12          Similarly, in paragraph 56, the next to last line

13  ends "another senior gang member," referring to Ronald Stanley.

14          I join Mr. Schneider as to paragraph 58 and ask that

15  the reference to the Madesto Gaston murder, which is referenced

16  back to other paragraphs, be stricken from this report.

17          Paragraph 59 regarding the drug trafficking, there's

18  no assertion that Mr. Stanley had anything to do this and I ask

19  that it be deleted from his Report.

20          Similarly, I join in the comments on paragraph sixty

21  which I've already stated regarding the weight and the amount

22  of profits per week.

23          On page nineteen, paragraph 66, the last two lines

24  refer to the fact that "Umeme Raysor and Ronald Stanley

25  kidnapped Mr. Tucker."  Mr. Schneider has already spoken on

34

1  this issue but there is no evidence in the record, no evidence

2  in fact that there was any kidnapping of Mr. Tucker and that

3  should be stricken from the Report.

4        In paragraph 67, we have another reference to Michael

5  Sidberry firing a gun at Tucker, who was shot twice in the

6  lower back.  A reader of this would believe that Mr. Stanley

7  was assisting Mr. Sidberry and that an innocent person was shot

8  as a result of that aiding and abetting.  The problem with that

9  paragraph is that Mr. Sidberry was acquitted of that conduct

10 and I think in fairness --

11       THE COURT:  There was testimony that he did fire

12 those shots.

13       MS. AMSTERDAM:  Obviously, that testimony was

14 rejected by the jury or he would have been convicted.

15       THE COURT:  That doesn't mean it shouldn't be in the

16 Presentence Report.

17       MS. AMSTERDAM:  Well, even if it should be included

18 in the Report, I think at least the Report in fairness -- I'm

19 saying the whole picture --

20       THE COURT:  Well, that's up to you.  Excuse me a

21 minute.  I'll add your comments -- I'll have the minutes

22 transcribed and I'll add your comments.

23       MS. AMSTERDAM:  Fine.  Thank you, Your Honor.

24       Just to finish up on the record, and I am moving

25 through this quickly --

35

1          THE COURT:  I'm not trying to hurry you along.

2          MS. AMSTERDAM:  On page twenty, the top line refers

3    to Stanley's associate, Michael Sidberry again.  I appreciate

4    Your Honor agreeing to provide my comments which do reflect

5    that we take issue with that Mr. Sidberry was an associate

6    given the fact that he was acquitted.  That would follow

7    through on paragraph 69 also.

8          Turning to paragraph 75, Mr. Schneider has asked that

9    the reference to the Leonard Rothwell murder remaining an

10   uncharged homicide in Brooklyn be deleted because it's

11   factually inaccurate.

12         On paragraph 22, which I'll come to at the very end,

13   again there's a statement to a full partner in the leadership,

14   and later on, supervisory discretion.

15         THE COURT:  Paragraph 22 or page --

16         MS. AMSTERDAM:  No, page 22, paragraph 77.  It starts

17   at the second line on page 22 where you see in bold type,

18   "Stanley became a full partner in the leadership."

19         THE COURT:  Okay, I see it.

20         MS. AMSTERDAM:  And Probation, in this particular

21   section, says that he should get a four level adjustment in the

22   drug conspiracy.  I'll address that at the end.

23         I note that they did also say that he should get a

24   two level adjustment for firearms that were alleged to be

25   easily accessible to the defendant but in the final

36

1   calculations they did not include that in their calculation,

2   nor was it included in Mr. Raysor's Probation Report.  So I'd

3   just state that for the record.  But I'm not asking the Court

4   to take any action as a result of it.

5          In paragraph 78, the third sentence starts, "To

6   enforce gang loyalty," speaking of Ronald Stanley, he was

7   involved in shootings and stabbings of fellow gang members both

8   in Brooklyn and in Norfolk, Virginia.  And then it goes on to

9   talk about the murder of the individuals who were thought to be

10  the witnesses.  As to conduct involving shootings and stabbings

11  of fellow gang members other than the Tucker information in

12  Virginia which is referenced earlier, there is simply no

13  support in the record, or no facts or no evidence, or no

14  testimony to say that Mr. Stanley ever participated in any

15  other gang activity where the conduct was for the purpose of

16  enforcing gang loyalty, and where he was alleged to have

17  participated in shootings and stabbings.  That's just not

18  simply the record at all.

19         There's also an adjustment here in role as to the

20  murders which I will address in one moment.  I will now turn to

21  page 33 which is paragraph 117, the victim's impact statement.

22  And herein, I think Probation recommended that Mr. Stanley be

23  held accountable for restitution, in I think approximately

24  $4,300.00.  That amount being arrived at as the cost of the

25  funeral and an additional $1,100.00 for expenses for out-of-

37

1   town relatives and clothing.

2          I have two statements there.  I don't know whether or

3   not there's enough of a proximate link to the $1,100.00 for

4   expenses for out-of-town relatives to have it come under the

5   statutory rubric of restitution.  But even if the Court were to

6   find that that is a fair figure, then joining the analysis

7   raised by Mr. Schneider, I believe that this figure would have

8   to be shared jointly and severally by the other participants in

9   this murder, namely Sean Davis, James Killingsworth, Gerald

10  Lewis, Darryl Jackson, and Brian Brooms.  The Court correctly

11  stated that the statute now seems to require that restitution

12  be mandatory and the statute does that without rhyme or reason

13  as to whether or not someone is a cooperator or not a

14  cooperator.  It requires restitution for everyone.  And it

15  would seem to me that those people, including the people who

16  actually pulled the trigger should be held accountable for that

17  restitution, and that the restitution should be apportioned

18  between the six people.

19         My last set of objections go to role adjustment and I

20  turn, first, to page 34, paragraph 126.  Your Honor will see a

21  role adjustment on the conspiracy to murder Jamella Brown,

22  Kimma Reaux and Christopher Ryant, on paragraph 126, Your

23  Honor.

24         THE COURT:  I see it.

25         MS. AMSTERDAM:  And then, similarly, if Your Honor

38

1  looks to paragraph 132, there's a four level role adjustment
2  for the racketeering activity of the murder of these same
3  witnesses, and that would follow through -- they're all the
4  same crimes -- to paragraph 138 and 144.  All of these have to
5  do with Mr. Stanley being adjudged to have a four point
6  supervisory role in the participation of the conspiracy to
7  murder a witness against him, and then in the actual murders of
8  the three persons who were later found out not to be witnesses.
9            I think that -- do you see where I'm pointing to,
10 Your Honor?
11           THE COURT:  I do.
12           MS. AMSTERDAM:  I think that that role enhancement in
13 all situations is inappropriate for the following reasons.  The
14 Court will remember that Mr. Stanley was imprisoned at the time
15 these murders or conspiracy to murder took place.  He
16 apparently reached out for people and complained bitterly -- if
17 you credit the record -- that no one was doing anything for him
18 and that some of the younger gang members decided that they
19 would then try to find the witness against him and murder that
20 witness.
21           Now, I note in the Probation Report that no other
22 person including the shooter or shooters, including the persons
23 who provided the guns, including Gerald Lewis who got the
24 photograph of the alleged witness and sent them to a particular
25 location, none of those people received any role adjustment.

1    It was deemed that the actual shooting was the level of the

2    crime, namely if you're charged with murder and racketeering,

3    the shooting is the actual basis of the crime.  To give

4    somebody who wasn't there, who didn't participate in the

5    shooting, who didn't stake out the witnesses, and who, frankly,

6    to tell you on the record, would not have shot these people,

7    these people were not the witnesses against him.  To give him a

8    role enhancement when no other person gets a role enhancement

9    is not supported in law or in fact.  And I think that, Your

10   Honor -- it's not going to matter, a 43 or a 47 makes no

11   difference in a guideline calculation -- but, legally, and for

12   purposes of Bureau of Prisons reviewing this report, he just

13   does not legally get a role enhancement for this.

14          Almost to the end on page 37, under the "Conspiracy

15   to distribute crack cocaine," at 156, you'll see that the

16   defendant received a four level role enhancement and it states

17   in there, "Defendant was one of the primary leaders and

18   organizers in an extensive organization that consisted in

19   excess of five individuals."  I note that Mr. Stanley was never

20   charged in the criminal continuing enterprise count which was

21   Count Eighteen, which was that language, "Primary leader,

22   organizer, organization of more than five individuals."  He was

23   not deduced by the Government to have a sufficient role as to

24   warrant being placed in that count.  Yet, for purposes of this

25   Report, he is given the exact same upward adjustment that Mr.

40

1    Raysor was given, who the Government has maintained not only

2    was the head of the organization but whom the Government sought

3    and obtained a CCE conviction.

4           So I believe that even if Your Honor were to find

5    that he was not the average participant, you could not find

6    that he is a level four for purposes of this, and the statute

7    does permit the Court to give a level two or a level three role

8    adjustment, and I do not think that the facts of the law

9    support anything higher then at most a two level adjustment.

10          I won't repeat my remarks other than to say in

11   paragraph 162 it's the same argument on the four level role

12   adjustment vis-a-vis the murders.

13          In paragraph 168, again, murder and aid of

14   racketeering.  I object to the four point enhancement.

15          On 174, the four point enhancement on the murder.

16   Object to.

17          180 paragraph, four level enhancement.  Object to.

18          That would be the end of the level adjustments and I

19   would then state that if Your Honor were to not give a four

20   level managerial adjustment, that the unit calculation

21   contained in paragraphs 192, 193, and 194 would have to be

22   adjusted accordingly.  I think that Your Honor should strike

23   the managerial portions that the defendant should on the

24   respective crimes have a Level 43 and that with the adjustments

25   in the multiple count it would bring his combined adjusted

41

1    offense level to a 47.

2            I think that the last objection that I have, Your

3    Honor, goes to Page 42, Paragraph 207 and 208 that refers to

4    other criminal conduct, and therein there's a recitation or a

5    statement regarding the fact that the defendant has -- had a

6    series of infractions within the institution for refusing to

7    submit to a drug test.  That's not other criminal conduct.

8    That may be an administrative or adjudication, that may be

9    something akin to not following the rules.  Clearly, Bureau of

10   Prisons keeps a record of each incarcerated inmate that follows

11   him or her to whatever institution they are designated, but to

12   put that under other criminal conduct, I must say that I've

13   really almost never seen that and I don't believe that

14   Paragraphs 207 or 208 should be in this report.  Bureau of

15   Prisons has all of the facts, all of the information and all of

16   the ability to present a complete and accurate report to

17   whatever institution is receiving Mr. Stanley.  I don't believe

18   that the Probation Department should include this information

19   in its report, and that --

20           THE COURT:  If I struck out the word "criminal."  I

21   mean I take it that's something they may be interested in in

22   the Bureau of Prisons if they were considering where to put

23   him.

24           MS. AMSTERDAM:  I think that they would.  I think

25   that they would and I'm certain that MCC or MDC provides that

42

1    information to them.  It's just that none of us really have an
2    adequate basis here as we stand in Court for knowing whether or
3    not this is accurate.  I have no way of testing it.  I'm sure
4    Your Honor has no way of testing it.  We've never heard any
5    evidence or any proffer as to that, and I would ask that it be
6    stricken and that they just deal with it internally.
7            Other than that, that concludes my objections and
8    exceptions to the Probation Department -- to the Probation
9    Report.
10           THE COURT:  Did you want to say something, Mr.
11   Schneider?  I sense you want to say something.
12           MR. SCHNEIDER:  You sense accurately, Your Honor.  I
13   didn't mention this earlier but I'd like to now if I may just
14   regarding the Probation Department's calculation of the
15   defendant's criminal history.  Again, while the result doesn't
16   really matter because it's a statutory sentence, I think it
17   matters in terms of fairness with the report following him to
18   wherever he goes.
19           There is a finding by the Probation Department that
20   he has seven criminal history points.  That's based on two
21   convictions in '87 when he was a -- where he received youthful
22   offender adjudication, a '93 conviction and then a -- one of
23   the -- two of the points indicating that he committed a crime
24   within two years of the commencement of the instant offense.
25           What I think the problem is the Government was

1  permitted during the trial over the defense objection to

2  present evidence to the jury about Mr. Raysor's gun possessions

3  and gun convictions as uncharged crimes to attempt to prove his

4  role within the racketeering enterprise.  They did that in an

5  attempt to argue to the jury that the possession of those

6  weapons allowed him to maintain -- either attain or maintain

7  his position within the organization.  So, on the one hand,

8  they argued to Your Honor and to the jury that in 1987 and 1993

9  he possessed these weapons as part of the conspiracy and part

10  of the racketeering enterprise yet now the Probation Department

11  I assume with the Government's approval is asking Your Honor to

12  punish Mr. Raysor again in crimes that occurred during the same

13  time period.  The Indictment reads from 1985 up to September of

14  '96, I believe.

15        Well, the convictions we have here are '87 which

16  occurred during the time frame of the Indictment of the

17  racketeering enterprise and the narcotics conspiracy.  The

18  Government so argued to the jury, Your Honor permitted it over

19  our objection, and now it seems that Mr. Raysor will be

20  punished twice.

21        THE COURT:  I don't understand.

22        MR. SCHNEIDER:  Well, Your Honor --

23        THE COURT:  I would have supposed when you're trying

24  to determine the criminal history category you take into

25  account prior crimes.

44

1          MR. SCHNEIDER:  That's correct, prior crimes.  If
2    I --
3          THE COURT:  What's your objection?
4          MR. SCHNEIDER:  My objection is on the sentencing
5    guidelines 4A1.2A1 defines -- I'll wait to everybody --
6          THE COURT:  Wait a minute.  4A --
7          MR. SCHNEIDER:  4A1.2A1 --
8          THE COURT:  I have it in front of me.
9          MR. SCHNEIDER:  Okay.  Subdivision A, Paragraph 1,
10   the term "prior sentence" means any sentence previously imposed
11   upon adjudication of guilt whether by guilty plea, trial or
12   plea of nolo contendere -- here's the important part, Judge.
13   For conduct not part of the instant offense.  If the Government
14   argued successfully to Your Honor in --
15         THE COURT:  I don't think they charged these --
16         MR. SCHNEIDER:  That's exactly my --
17         THE COURT:  -- crimes.  No, I don't think they
18   charged these crimes in this offense.  They might have been
19   used as a part of the evidence.
20         MR. SCHNEIDER:  That's exactly right, Judge.  I agree
21   with that.  They argued it as part of the evidence because they
22   believed it was part of the entire conspiracy.
23         THE COURT:  Well, but they are prior sentences.
24         MR. SCHNEIDER:  Well, that's where I guess I'm asking
25   you -- that's right, I disagree.

1          THE COURT:  And this -- you know, that -- I

2   understand your argument.

3          MR. SCHNEIDER:  My position is that if this

4   conspiracy and racketeering began in '85 which is the

5   Government's theory, the Government's proof and Your Honor

6   accepting that for purposes of admitting certain things into

7   evidence, if he was involved in '85 then the crimes committed

8   in '87 didn't occur prior to the instant offense.  He was

9   involved in a conspiracy in '85 according to the Government,

10  number one.

11         Number two, also, where he got two points in

12  Paragraph 15 -- I'm sorry, Paragraph 157 again giving two

13  additional points because this instant offense was committed

14  less than two years after release from imprisonment.  Again,

15  Judge, the crime was an ongoing crime beginning in '85

16  according to the Government.  So it didn't happen after he was

17  released.  The crime supposedly happened beforehand.  The

18  instant crime occurred beforehand.

19         So it's our position that while it may seem

20  incongruous he should have zero criminal history points because

21  the charges that he was sentenced in '87 and '93 occurred while

22  the conspiracy and the enterprise, the racketeering enterprise

23  were being performed according to the Government.  So that's

24  our position.

25         THE COURT:  All right.  Did you want to make any

46

1   comment on these?

2        MR. KELLEY:  Just briefly, Your Honor.  Obviously the

3   Government's position is that the defense has misunderstood the

4   purpose of the Presentence Report.  What's provided to the

5   Court is a factual basis not just for these two defendants but

6   for the entire enterprise, for all the proof at trial,

7   including proof that may not be at trial, and the point is to

8   provide the Court with a full picture of all relevant conduct

9   as is required under the sentencing guidelines for purposes of

10  sentencing.

11       Furthermore, it is very important that all of this

12  information go forward through the system, to the Bureau of

13  Prisons so that they can understand the scope of all the other

14  defendants.  As Your Honor is well aware, the Presentence

15  Report includes information not only as to these sentenced

16  defendants but their co-defendants which are outlined

17  throughout the Presentence Report, and that's very important to

18  the Bureau of Prisons.  The Government would consent to Your

19  Honor attaching a copy of today's proceeding and we also agree

20  with the defense it does not affect the underlying calculation

21  in this instance and, therefore, perhaps it's not worthy

22  spending that much more time on it.  But we believe it is

23  entirely appropriate for the Probation Department to include

24  all the information they have in the report in particular where

25  Your Honor is well aware that there are convictions both at

47

1  trial and by guilty plea supporting all of the factual
2  allegations here.
3         Your Honor is obviously going to be sentencing other
4  defendants in this case and the information relative to their
5  charges has been included as the overall picture here as it
6  should be under the requirements of the sentencing guidelines.
7  Therefore, we believe it would be appropriate for Your Honor
8  simply to recognize the defense has certain objections and
9  obviously we believe anyone to read the report would read it
10  with a certain common sense approach that the defendants are
11  convicted of certain items but not of others, and the report
12  identifies those areas where the defendants were personally
13  responsible and involved in those where they were not.
14         Moving forward to the issue of restitution.  We
15  obviously submitted a letter, but we do agree with the defense
16  that there would be joint and several liability for all
17  defendants who have been convicted as to particular murders and
18  crimes and, therefore, as Your Honor moves forward there will
19  be the opportunity for you to consider restitution as to other
20  defendants and we would agree with the defense there should be
21  joint and several as to each of the defendants.  If Your Honor
22  were to order it, we believe it's mandatory under the new law.
23         As to the specific issue of the role adjustment
24  raised by the defendant Stanley, we note that the trial record
25  was replete with the fact that James Killingsworth, Cleveland

48

1    Worley, Darnell Jackson, Brian Brooms, Sean Davis and Gerald

2    Lewis among others were involved in the murders of Kimma Reaux,

3    Christopher Ryant and Jamella Brown.  That satisfies the five

4    or more that satisfies the requirement of the four level

5    enhancement for Mr. Stanley.  Therefore, we believe it's

6    appropriate for the report to reflect it.  We also believe it

7    would be appropriate for Your Honor to adopt the finding of the

8    Probation Report as to his role in those offenses as well as

9    the other offenses.  We believe it is supported by the evidence

10   both at trial and that Your Honor has heard throughout the

11   proceedings in this case.

12           Lastly, we would just advise the Court that Mary

13   Williams is here in Court today and would like to address the

14   Court before your sentencing of Ronald Stanley.  I also have a

15   statement from the son of Jamella Brown that he has asked me to

16   read to Your Honor.

17           THE COURT:  Yes.

18           MR. KELLEY:  I don't know if now is an appropriate

19   time.

20           THE COURT:  Sure.

21           MR. KELLEY:  Let me begin first by a statement from

22   Frank Townsend who is the son of Jamella Brown who was shot and

23   murdered having opened her door in the middle of the night, and

24   essentially this is only as to Mr. Stanley.

25           "Your Honor, it is hard for me to understand how

1    someone can do this to a wonderful woman like my mother.  I'm

2    her only child and for someone to do this is inexcusable and

3    hurtful and what makes it so painful is that she has just

4    become a grandmother for the first time and she can never see

5    her granddaughter.  So my daughter has been cheated from having

6    a grandmother and I have been cheated from having a mother, and

7    my wife has been cheated from having a mother-in-law.  This has

8    been painful for the whole family.  I don't know how you could

9    have done this and, Your Honor, I hope you give him the maximum

10   and I hope that he will stay in jail for the rest of his life.

11   Thank you," from Frank Townsend.

12          At this time I'd ask that Ms. Williams be allowed to

13   address the Court.

14          THE COURT:  Yes, certainly.  Come on up here, Ms.

15   Williams.

16          MS. WILLIAMS:  First I have to thank God for the day,

17   Your Honor, and I want to thank the District Attorney for God

18   giving them knowledge to go out and find my son's killer who

19   shot me, who shot my husband, who shot my son which why my

20   husband is still traumatized from being shot and losing his son

21   and, Mr. Raysor, you took away something that was precious to

22   me, but in my heart today I do not have any malice for you.

23   The only thing I'm asking you today is to seek God.  See, I'm a

24   mother.  You have a mother.  You have a father.  I don't know

25   whether you have any children or not, but just all I'm asking

1  you now is to seek the Lord because see you almost destroyed my

2  family life.

3          My son didn't have a chance.  I didn't have a chance.

4  My husband didn't have a chance.  When my son got killed -- got

5  shot that night, I couldn't go to him because I was shot also.

6  My husband tried to go to him but he was shot in the process.

7  But I hope you think and ask God forgive you for what you did

8  to the Williams family.  He has a daughter back there who was

9  four years old in that car.  I had a daughter back there who

10  was nine years in the car.  She is fifteen today and she still

11  crying because she doesn't have a father.  You took that from

12  us.  You did.  But all I can do is thank the Lord just to have

13  mercy on you because I don't have any hate in my heart.  I

14  don't have any malice, but I'm asking the day that justice be

15  prevail, whatever it be that just be prevail today.  I don't

16  want any revenge.  Just justice.  Thank you.

17          THE COURT:  Do you have anything else, Mr. Kelley?

18          MR. KELLEY:  No, Judge.

19          THE COURT:  All right.  Do you want to come up, Mr.

20  Raysor?

21          MR. KELLEY:  Excuse me, Your Honor.  If I might just

22  have a moment.

23                  [Pause in proceedings.]

24          MR. KELLEY:  There is another victim family member

25  here.  I did not believe that she wanted to speak, but she may.

51

1  Your Honor, we also have the mother of Kimma Reaux here in

2  Court.

3          THE COURT:  You can sit down if you want.

4          MR. KELLEY:  And she has actually asked that she may

5  be able to address the Court at this time.

6          THE COURT:  Certainly.  Come on up to the microphone

7  so I can hear you.  Pull this down for her, will you?

8          MS. REAUX:  Well, I have been overwhelmed for a long

9  time since the detectives came to my house and told me what had

10  happened to my daughter and my son-in-law.  My daughter, she

11  was the oldest child, my oldest child, and she herself was the

12  mother of five children and she was as myself, we have cancer

13  in our family.  My youngest daughter had cancer, had to go to

14  Sloan-Kettering when she was seventeen years old to have a

15  little lump removed.  I've had cancer myself.  I have it at

16  this time, and my daughter was dying from cancer and she was

17  not -- she was not a threat to anyone.  She was bedridden.

18  When she was shot in her bed she fell over behind the bed and I

19  don't know how long it took her to die.  I have no idea.

20          But I feel very bad about the whole thing because

21  there was nothing that we could do.  Her husband was taking

22  care of her.  He had been a police officer, but he was taking

23  care of her and so we, the family, had to go ahead and do what

24  we had to do as far as funeral services were concerned and my

25  grand -- I have seven great grandchildren that I had in my

1  house May the 30th, but we try to carry on and that's about all

2  I can say.  It was very hard.  I can't get over it.  I'll never

3  recover from this death.

4         THE COURT:  Mr. Raysor, if you'd like to come up.

5  Would you like to say anything to me?  You don't have to.

6         THE DEFENDANT:  No.

7         THE COURT:  Do you want to say anything more about

8  the sentence?

9         MR. SCHNEIDER:  No, Your Honor.

10         THE COURT:  I have to under the guidelines impose

11  life imprisonment on Counts One, Two, Eighteen and Nineteen to

12  run concurrently on all counts, five years supervised release

13  and a special assessment of $400.00.

14         Now, I am required to impose restitution and I'll

15  impose it with respect to the Williams in the amount of

16  $12,627.86 and with respect to Maryann --

17         MR. SCHNEIDER:  Your Honor, I'm sorry.  I don't think

18  the Government is asking that restitution regarding Ms.

19  Whitmore be applied to Mr. Raysor.  He was not --

20         THE COURT:  Is that Mr. Stanley's?

21         MR. SCHNEIDER:  Yes.

22         THE COURT:  Sorry about that.  You're right.  This

23  should be with respect to -- now, the Government is asking for

24  restitution with respect to which?

25         MS. FRIESEN:  With respect to Mr. Raysor, that's with

53

1   respect to the Williams murder.

2            THE COURT:  The Williams murder.

3            MS. FRIESEN:  That's $12,627.00.

4            MR. SCHNEIDER:  That's correct.  But then I believe

5   you were about to --

6            THE COURT:  No, no.  The $4,000.00 should be Mr.

7   Stanley's.  So the restitution for Mr. Raysor with respect to

8   the Williams would be $12,627.86.

9            MR. SCHNEIDER:  Your Honor, I would ask that you

10  apportion Mr. Raysor the one-quarter of that responsibility,

11  please.

12           THE COURT:  Well, I'm not going to do that now, but

13  I'm going to -- obviously from what the Presentence Report says

14  he's not able to pay that right now in that amount.  Maybe your

15  client would like to disabuse me.

16           MR. SCHNEIDER:  No, I wish I could.  He does not have

17  any money, Your Honor.

18           THE COURT:  Okay.  But he'll pay it in equal

19  installments monthly, fifty percent of what he earns, what he

20  earns monthly.  Is there anything else?

21           MR. KELLEY:  No, Your Honor.

22           MR. SCHNEIDER:  I would just ask Your Honor to direct

23  the Bureau of Prisons to locate Mr. Raysor in an Eastern

24  facility, number one so his family, his entirely family as you

25  have seen --

54

1          THE COURT:  I'll do that but in a case like this they

2   don't pay much attention --

3          MR. SCHNEIDER:  I have more confidence in Your

4   Honor's power than you do, Your Honor.

5          THE COURT:  -- to what I say.

6          MR. SCHNEIDER:  But I would ask you to direct that he

7   be --

8          THE COURT:  I will recommend that he be closest to

9   where his home is in New York.

10         Now, I'm also going to direct that the minutes of

11  this proceeding be attached to the Presentence Report and

12  follow Mr. Raysor into wherever he's going, and I think that's

13  the only practical way of taking account of your objections.

14         MR. SCHNEIDER:  Thank you, Your Honor.  We will be

15  filing a notice of appeal.

16         THE COURT:  Yes.  Now, I have to tell you that you

17  have a right to appeal and if you're unable to pay the cost of

18  an appeal you could apply for leave to appeal in forma

19  pauperis.  That means as a poor person.

20         Mr. Stanley --

21         MS. AMSTERDAM:  Your Honor, Mr. Stanley has requested

22  that he be permitted to remain seated.  He has not been feeling

23  well.

24         THE COURT:  Sure.  Do you want to move your chair up

25  here or do you want to sit there?

1          MS. AMSTERDAM:  He's fine, Your Honor.  He's been

2   able to hear all of the proceedings.

3          THE COURT:  Would you like to say anything more?  No,

4   you, Ms. --

5          MS. AMSTERDAM:  I would only state the following.  I

6   know that Your Honor is bound by the statute and by the

7   guidelines to impose a certain sentence.  I just want the

8   record to reflect the fact that -- in part because the victim

9   spoke that -- I think that people who are here should know that

10  Mr. Stanley was in prison when these horrendous crimes

11  occurred, that he was not there.  He has maintained his

12  innocence on these crimes.  He did not -- he's asserted that he

13  did not participate.  He met no harm to Kimma Reaux, to Jamella

14  Brown or Christopher Reaux.  He had never met these people ever

15  before, and I think that it is a very sad thing to see a woman

16  -- a wise and God fearing woman stand before this Court and

17  talk about the pain that she has suffered because her daughter

18  and her son-in-law were killed, but I think it's also painful

19  to know that in many ways the shooters and the actual

20  participants in these crimes will be treated more leniently

21  than Mr. Stanley who was not there, did not know these people

22  and wished them no harm.

23          Mr. Stanley is prepared to be sentenced at this point

24  and wishes to make no statement, no additional statement.

25          THE COURT:  Would you like to say anything, Mrs.

56

1 Stanley?

2          MS. STANLEY:  No.

3          THE COURT:  Now, as you know I -- under the

4 guidelines I have to impose a sentence of life imprisonment

5 which I do on Counts One, Two, Four, Six, Seven and Nineteen,

6 and on Count Three, 120 months custody concurrent to Counts One

7 through Four, Six, Seven and Nineteen, and on Count Sixteen 240

8 months custody concurrent to Counts One, Two, Three, Four, Six,

9 Seven and Nineteen.  I'll also impose a five-year supervised

10 release and $500.00 in special assessments.  Is there any place

11 that you want me to recommend?

12          MS. AMSTERDAM:  I would request respectfully that

13 Your Honor request that he be kept in the northeast region if

14 possible within the Bureau of Prisons especially during the

15 period of time that his appeal is pending.

16          THE COURT:  I'll recommend that he be kept closest to

17 his home.  They don't pay much attention to me in these things

18 and it's up to the Bureau of Prisons.  All right.  Is there

19 anything else?

20          MS. FRIESEN:  Your Honor, with respect to

21 restitution.

22          THE COURT:  Yes, restitution.

23          MS. FRIESEN:  We ask that the Court order Mr. Stanley

24 pay restitution in the amount of $4,308.00 which is the amount

25 requested by Mrs. Whitmore pertaining to the --

1          THE COURT:  That's Ms. Whitmore, whose daughter is

2  Kimma Reaux?

3          MS. FRIESEN:  That's correct.

4          THE COURT:  I'll direct that there be restitution of

5  $4,308.00, and I'll direct that it be paid in installments;

6  fifty percent of the defendant's earnings.

7          MR. KELLEY:  Your Honor --

8          MS. AMSTERDAM:  I would also, similar to Mr.

9  Schneider's request, I would ask that Your Honor direct that

10  restitution be paid jointly and severally with the other five

11  participants, I believe.  And I also note that while the

12  Government did cite legal authority for I think an Eighth or

13  Sixth Circuit case for the proposition that the mandatory

14  provision of restitution does not violate the ex post facto

15  law, I don't think this Circuit has decided that issue and I

16  would reserve the right to raise that issue on appeal should it

17  be appropriate.

18          THE COURT:  Raise any issue you want on appeal.

19          MR. KELLEY:  Your Honor, there's one additional

20  matter.  I believe that in this instance there actually was a

21  contested issue related to the sentencing guidelines.  The

22  defense has argued that they should not have a four level role

23  adjustment for Mr. Stanley --

24          THE COURT:  I know but I've taken that into account.

25          MR. KELLEY:  Your Honor, I believe you may have to

58

1  make a finding where there is a contested point.  I believe

2  with Mr. Raysor there wasn't.  I don't know if you'd like to

3  make a finding as to that point.

4          THE COURT:  Did you want to say anything more than

5  you've already said?

6          MS. AMSTERDAM:  No, Your Honor.

7          THE COURT:  No, I'm going to make that role

8  adjustment --

9          MR. KELLEY:  Thank you.

10          THE COURT:  All right, now I have to tell you that

11  you have a right to appeal and if you're unable to pay the

12  costs of an appeal, you can apply for leave to appeal _informa_

13  _pauperis_ which means as a pauper.

14          MS. AMSTERDAM:  I have also indicated to Mr. Stanley

15  that he has a right to appeal and I do accept responsibility

16  for filing such a notice of appeal, and I will do so timely.

17          THE COURT:  And with respect to Mr. Stanley, too,

18  I'll direct that the minutes be attached to the Probation

19  Report so it can follow him.

20          MS. AMSTERDAM:  Thank you, Your Honor.

21          THE COURT:  Fine.  Good day.

22                    * * * * * *

23

24

25

59

1        I certify that the foregoing is a correct transcript

2   from an electronic sound recording of the proceedings in the

3   above-entitled matter.

4

5        _____

6                CARLA NUTTER

7

8   Dated:   September 16, 1999

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25